Revaluation Program — Cost — School District Budget The formula for computing each school's share of the programs cost as outlined in 68 O.S. 2481.1 [68-2481.1] — 68 O.S. 2481.11 [68-2481.11] (1968), includes the proceeds from the four mill county wide levy as set in Oklahoma Constitution, ArticleX, Section 9b. The ratio for apportioning the cost of the revaluation program in 68 O.S. 2481.1 [68-2481.1] — 68 O.S. 2481.11 [68-2481.11] (1968), is applicable to a school district's sinking fund attributable to ad valorem taxes and should be included in the school district's budget. The cost of the revaluation program is applicable to the building fund of a school district and also should be added to the school district's budget. The inclusion of the sinking fund and building fund in the formula for apportioning the cost of the revaluation program is constitutional the pro rata share of such levies may be made against the school's general fund. The Attorney General is in receipt of your letter dated May 27, 1968, wherein you refer to certain provisions of House Bill No. 1229, Thirty-first Legislature, Second Session. You then ask the following questions: "1. Does the formula for computing each schools' share of the program's cost include the proceeds from the four mill county-wide levy? "2. Does that portion of Section 3 cited above require the pro rata share of the program's cost to be levied against the school district's sinking fund? "3. Does that portion of Section 3 cited above require the pro rata share of the program's cost to be levied against the school district's building fund? "4. If your answer to questions two and three is in the affirmative, are such charges against the sinking fund and building fund Constitutional? "5. May the pro rata share of such levies be legally made solely against the general fund of the school?" House Bill No. 1229, Thirty-first Legislature, Second Session, provides in relevant part: "Section 3. Section 4, Chapter 359, O.S.L. 1967, (68 O.S. 5204 [68-5204] (1967)), is amended to read as follows:" "'The cost of the comprehensive program of revaluation shall be paid by those who receive the revenues of the mill rates levied on the property of the county in the following manner: The county assessor shall prepare a special budget for such comprehensive program of revaluation and file the same with the county equalization and excise board. That board shall apportion such cost among the various recipients of revenues from the mill rates levied including the county, all cities and towns, all school districts and all sinking funds of such recipients, in the ratio which each recipient's share of the total tax proceeds collected from its mill rates levied for the preceding year bears to the total tax proceeds of all recipients from all their mill rates levied for the preceding year. Such amounts shall be included in or added to the budgets of each such recipient, including sinking funds, and the mill rates to be established by the board for each such recipient for the current year shall include and be based upon such amounts. Then the board and each such recipient shall appropriate the said amounts to the county assessor for expenditure for the comprehensive program of revaluation.'" The language of the aforementioned section is clear and unambiguous in prescribing the method for apportioning the cost of the revaluation program. Pertinent here is that language of 82 CJS., Statutes, Section 322, p. 577, which states: "Where the language of a statute is plain and unambiguous there is no occasion for construction, and the statute must be given effect according to its plain and obvious meaning." Article X, Section 9(b) Constitution of Oklahoma, provides for the four (4) mill levy you mentioned in your first question. This section provides in pertinent part: "A tax of four (4) mills on the dollar valuation of all taxable property in the county shall be levied annually in each county of the State for school purposes and, until otherwise provided by law, the proceeds thereof shall be apportioned to the school districts. . ." Clearly, the proceeds derived from the four (4) mill levy are "revenues of the mill rates levied on the property of this county". It is equally clear that the various school districts are the "recipients of revenues from the mill rates levied." It is therefore the opinion of the Attorney General that your first question should be answered in the affirmative: that is, the formula for computing each school's share of the program's cost does include the proceeds from the four mill county-wide levy. Article X, Section 28 Constitution of Oklahoma expressly provides for the uses of the various sinking funds as follows: "Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due, second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay." Thus, the use of a sinking fund for any other purpose than those enumerated above is precluded by this constitutional provision. However, the sinking funds are contingent upon revenue derived from taxes on an ad valorem basis. In addition to being a "recipient of revenues from the mill rates levied," the Legislature specifically included all sinking funds of such recipients in the apportionment of the revaluation program's cost. The relevant portions of House Bill No. 1229, supra, provide for the costs to be apportioned among certain recipients, including counties, cities, and towns, school districts and all sinking funds of such recipients and further provides for such recipients to include their cost in the next budget. This language denotes the recipients as the counties, cities and towns and school districts and designates their responsibilities. The various school districts are, in effect, the ultimate recipients of revenue intended for their building funds, sinking fund or general fund. Hence, as the recipient, a school district could include the apportionment of the revaluation program cost to a sinking fund in their budget and pay for same from the general fund. It is therefore the opinion of the Attorney General that your second question should be answered as follows: the ratio for apportioning the cost of the revaluation program in House Bill No. 1229, supra, is applicable to a school district's sinking fund attributable to ad valorem taxes and such cost should be included in or added to the budget of the school district. The school district building fund to which you refer in your third question is authorized in Article X, Section 10 Constitution of Oklahoma. The uses of such a fund are limited therein to erecting, remodeling or repairing school buildings or for purchasing furniture. This limitation is somewhat analogous to that of the sinking fund, in regards to the funding of the revaluation program costs. Since the building fund is derived from ad valorem taxes and since the school district is, in effect, the recipient of such taxes, the school district could also include the apportionment of the revaluation program cost to a building fund in their budget and pay for same from the general fund. In answer to your third question, the Attorney General is of the opinion that the ratio for apportioning the cost of the revaluation program in House Bill No. 1229, supra, is applicable to the building fund of a school district and such cost should be included in or added to the budget of the school district. The legislative intent, as expressed in the previously cited statutory provisions, is to apportion the cost of the revaluation program among those who receive the revenues of the mill rates levied on the property of the county. The Legislature specifically provided a formula for apportioning this cost among the recipients. 82 CJ.S., Statutes, Section 321, p. 561 states: "Since the intention of the Legislature, embodied in a statute, is the law, the fundamental rule of construction, to which all other rules are subordinate, is that the court shall, by all aids available, ascertain and give effect, unless it is in conflict with constitutional provisions, or is inconsistent with the organic law of the state, to the intention or purpose of the Legislature as expressed in the statute. . . ." The constitutional limitations on the uses of a sinking fund and building fund do not prohibit a school district from including the total cost apportioned to such funds in their budget and paying for same out of the general fund. This method of funding the revaluation program will give full effect to the legislative intent of apportioning the cost among those who receive the current proceeds from ad valorem taxes and who will also substantially benefit by the revaluation program. It therefore follows that your fourth and fifth questions should be answered in the affirmative; that is, the inclusion of the sinking fund and building fund in the formula for apportioning the cost of the revaluation program is constitutional and the pro rata share of such levies may be legally made solely against the general fund of the school. (Don Timberlake)